UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 02-22032-CIV-HUCK/Turnoff

LUCRECIA ESTEVEZ,

       Plaintiff,

v.

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,

       Defendant.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT, AND INCORPORATED MEMORANDUM OF LAW

COMES NOW, the Plaintiff, LUCRECIA ESTEVEZ ("Plaintiff" or "Estevez"), by and through undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure, hereby files this Response to Defendant's ("Defendant" or "ECFMG") Motion to Dismiss Second Amended Complaint and Incorporated Memorandum of Law, and in support thereof, states:

### BACKGROUND

1.     On or about May 27, 2003, Defendant filed its Motion to Dismiss Second Amended Complaint and Incorporated Memorandum of Law with this Court, and served Plaintiff by U.S. Mail on that same date.

2.     In its Motion to Dismiss, Defendant and its counsel take the position that Plaintiff is "apparently conceding that these regulations [45 C.F.R. § 51.2 and 22 C.F.R. § 62.27] are inapplicable, yet continues to allege that ECFMG is an arm of the Department of State, without any good faith basis for this allegation." (See ¶ 10, Motion to Dismiss Second Amended Complaint).



CASE NO.:02-22032-CIV-HUCK/Turnoff

The Defendant's motions and replies preceding the instant motion to dismiss demonstrate that the Defendant unreasonably continues to take the misguided position and interpretation that Ms. Estevez is seeking relief against the ECFMG *pursuant to* 45 C.F.R. § 51.2 (and 22 C.F.R. § 62.27). Id.

3.      To the contrary, Plaintiff has asserted all along, and continues to assert, that 45 C.F.R. § 51.2 and 22 C.F.R. § 62.27 are relevant to her cause of action . That being said, Plaintiff has not sought to use those federal statutes as a basis for the cause of action against ECFMG, or as a basis for jurisdiction in this case. Indeed, diversity of citizenship exists between the parties. (See ¶ 1, Pg. 3, Transcript of 4/22/03 hearing before the Honorable Paul Huck, on Defendant's own Motion to Dismiss).

4.      The Plaintiff has commenced this action based on violations of Plaintiff's procedural due process rights under the Fifth and Fourteenth Amendments.  Plaintiff's argument is made in good faith and on all the evidence available to the Plaintiff.  Pursuant to her claims against ECFMG, Plaintiff cites to 45 C.F.R. § 51.2 as evidentiary support for the allegation that the entire ECFMG organization, *taken as a whole*, has a close-enough nexus with the Federal government to be deemed a state actor[1] for purposes of Plaintiff's constitutional claims.

5.      Defendant and its counsel all but concede - in the instant motion to dismiss and in its other pleadings before this Court - that the ECFMG *regularly* acts as an arm of the United States Department of State. (¶ 10, Motion to Dismiss Second Amended Complaint).  One of the ECFMG's primary functions, as per agreement with the U.S. Department of State, is to supervise and/or certify

---

[1] As used throughout this Response and Memorandum of Law, the phrase "state action" denotes either federal or state government involvement.

2

  
CASE NO.:02-22032-CIV-HUCK/Turnoff

foreign medical graduates (¶ 9, Second Amended Complaint; ¶ 10, Motion to Dismiss Second Amended Complaint), many of whom, through the Exchange Visitor Program, must return to their home country to continue practicing their profession. Id.

6.    Ms. Estevez is not suing predicated upon ECFMG's specific involvement in the Exchange Visitor Program, but is using that fact, and the agreement enacted pursuant to 45 C.F.R. 51.2 and 22 C.F.R. 62.27, as evidence of a nexus and joint enterprise with the Federal government, and has plead as such in her Second Amended Complaint (¶¶ 9, 33, Second Amended Complaint).

7.    These facts, taken together, are pertinent to whether the ECFMG has a sufficient government nexus, and - quite to the contrary of what Defendant asserts - do not render the Defendant's involvement "irrelevant to whether ECFMG is a government actor for purposes of this action." The Defendant should not be able to allege immunity from suit where, at the very least, a colorable claim can be made that the organization has reached a position of cooperation with the government, in carrying out its day-to-day functions.

8.    Moreover, the Plaintiff has consistently asserted in her pleadings (and counsel for the Plaintiff has testified as such in hearings before this Court), that Plaintiff and her counsel have been recurrently frustrated in their attempts to elicit relevant information, pertinent to the allegations in this case. (¶ 3, Pg. 4, Transcript of 4/22/03 hearing before the Honorable Paul Huck, on Defendant's Motion to Dismiss). This information has been repeatedly sought from the United States Information Agency under the Freedom of Information Act (FOIA), but has not been produced. Id, despite the passage of numerous projected production dates by the subject Agency, who has not produced any documents whatsoever requested by the Plaintiff's counsel.

CASE NO.:02-22032-CIV-HUCK/Turnoff

9.      This relevant and pertinent information (including but not limited to the terms of the U.S. Department of State's agreement establishing the ECFMG, memorialized in 45 C.F.R. § 51.2) impacts on the relationship between the Defendant and the Federal government, and supports Plaintiff's allegations of ECFMG teamwork with government entities to an extent sufficient to establish "state action" under the applicable case law.

## MEMORANDUM OF LAW

10.     In Defendant's Motion to Dismiss Second Amended Complaint, counsel for the Defendant cites to case law for the proposition that the standards used for finding "state action" in violating a complainant's due process are the same under the Fifth and Fourteenth Amendments. See Gerena v. Puerto Rico Legal Svcs., Inc., 697 F.2d 447 (1st Cir. 1983). (¶ 3, Motion to Dismiss Second Amended Complaint). Further, Defendant declares that the state action element of a cause of action for violations of 42 U.S.C. § 1983 is assessed according the same standards as its Constitutional counterparts. See Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288 (2001).

11.     While these seem to be accurate statements of the law, that are to varying degrees applicable to the facts of the instant case, the other decisions cited by the Defendant in support of its motion to dismiss are distinguishable from the instant case facts. Furthermore, the Defendant leaves out important Supreme Court precedent in its review of the law, and with it, a meaningful discussion of what the Court says constitutes "state action."

12.     It is generally understood in this Circuit, that there are three "tests" used to determine whether a formally private party will be deemed a state actor, any one of which will satisfy

4

CASE NO.:02-22032-CIV-HUCK/Turnoff

the requirement for alleged procedural due process violations under the Fifth and Fourteenth Amendments. Those tests are: (1) the public function test, (2) the state compulsion test, and (3) the nexus/joint-action test.   Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001); Langston v. American College Testing Program, 890 F.2d 380, 384 (11th Cir. 1989).

13.    It is the third test - the nexus/joint action test - which is more broad than the other two tests, and which asks whether the state has intertwined itself with the private actor, such that the state *can or does* exert any influence over the exercise of the private actor's decisions.   Langston, 890 F.2d at 385 (citing San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee, 483 U.S. 522, 547 (1987)).  By implication, if such an influence over decision-making can be established, a legal basis exists for the finding of state action by a private actor.  San Francisco Arts & Athletics, id. at n. 29.

14.    As the Supreme Court has made clear, with respect to a determination of state action when abridgement of constitutional protections is alleged, "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the state in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722 (1961).  Moreover, when a complaint alleging state action is put forth, and the analysis is undertaken by the courts, "the dispositive question in any state-action case is not whether any single fact or relationship presents a sufficient degree of state involvement, but rather whether the aggregate of all relevant factors compels a finding of state responsibility." Id. at 722-26.

15.    Indeed, "[i]t is not enough to examine seriatim each of the factors upon which a claimant relies and to dismiss each individually as being insufficient to support a finding of state

5

CASE NO.:02-22032-CIV-HUCK/Turnoff

action. It is the aggregate that is controlling." <u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345, 360 (1974).

16.     In <u>Lugar v. Edmonson Oil Co., Inc.</u>, 457 U.S. 922, 923 (1982), the Supreme Court held that a private corporate creditor would be deemed a state actor for purposes of the plaintiff's claims under the 1871 civil rights statute and 42 U.S.C. § 1983, and additionally held that the conduct causing the deprivation of constitutional rights must be fairly attributable to the state. In so holding, the Court found that, "[i]n determining the question of 'fair attribution,' (a) the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by it or by a person for whom it is responsible, and (b) the party charged with the deprivation must be a person who may be fairly said to be a state actor ... because he has acted together with or has obtained significant aid from state officials... ." <u>Id.</u> at 936-37. In <u>Lugar</u>, it was "the procedural scheme created by the statute [relied upon by the private corporation, which] obviously is the product of state action." <u>Id.</u> at 941.

17.     Similarly, where the government creates a corporation by special law, that corporation may be deemed an agency of the government, for purposes of alleged constitutional violations. <u>Lebron v. National Railroad Passenger Corp.</u>, 513 U.S. 374, 400 (1995). In <u>Lebron</u>, the Supreme Court found that there was a long history of corporations created and participated in by the United Sates for the achievement of governmental objectives, even though, like other corporations formed in that manner, the entity's authorizing statute in that case provided that it "will not be an agency or establishment of the United States Government." <u>Id.</u> at 375.

18.     In <u>Lebron</u>, it was plead from the inception of the complaint that Amtrak, although

6

CASE NO.:02-22032-CIV-HUCK/Turnoff

formally a private entity, was closely connected with federal entities. Id. at 378. Like in the instant case, where the complaint alleges a close connection with federal entities, the Lebron Court - in finding state action on the part of the defendant - held that, by virtue of the enacting statute (*notwithstanding* the language of limitation therein), "[t]he government exerts its control not as a creditor [who might have invested in the corporation], but as a policymaker, and no provision exists that will automatically terminate control upon termination of a temporary financial interest." Id. at 399.[2]

19.     In the instant Complaint, the Plaintiff specifically alleges that government entities have exerted influence over the Defendant. Plaintiff further alleges that, as a consequence, the Defendant has been vested with state authority, with respect to treatment of categories of certain medical school graduates, *including* foreign medical graduates. (¶¶ 9, 13, Second Amended Complaint). Furthermore, as with the Plaintiffs in Lugar and Lebron, the Plaintiff in the instant Complaint has attempted to demonstrate through her pleadings that the right or privilege of ECFMG to engage in its business operations was, in significant part, created by the state pursuant to enacting language found in a statute (here, 45 C.F.R. § 51.2), and further, that these enactments/agreements were responsive to a national need of the U.S. State Department.

---

[2] Defendant cites to Remy v. Howard University, 55 F. Supp. 2d 27 (D. D.C. 1999), a district court case from the D.C. Circuit, for the proposition that Lebron, a Supreme Court case which did not limit in any way the applicability of an enabling statute to the finding of state action, has limited application. Nothing in Lebron indicates such a limitation, but even if this were true, the facts of the instant case meet the Remy court's standard, because the ECFMG *was* formed "in response to a national need": the assessment and certification of foreign medical graduates to practice medicine in this country or abroad, and the administration of the Exchange Visitor Program, materially impact alienage and immigration policy.

CASE NO.:02-22032-CIV-HUCK/Turnoff

20.     Plaintiff and counsel have used their best efforts to make these allegations <u>without</u>

violating the prohibition on pleading legal conclusions in a complaint. In this case, Plaintiff has had

the additional hurdle of stymied requests for public documents, when such documents likely could

further bolster the evidence of a symbiotic "nexus" between the Defendant and government entities.

21.     Defendant principally relies on <u>Staudinger v. Educational Commission for Foreign</u>

<u>Medical Graduates, et al.</u>, 1993 WL 138954 (S.D.N.Y. April 28, 1993) - a case in which Defendant

was also a party - in support of its Motion to Dismiss. That decision, and the subsequent decision

of the same name, <u>see</u> 1994 WL 410875 (S.D.N.Y. Aug. 3, 1994), are distinguishable from the

instant case, based on the facts plead in the instant Complaint.

22.     In <u>Staudinger</u>, a case in which the Southern District of New York found ECFMG was

not a state actor for purposes of the Fourteenth Amendment, the ECFMG denied the plaintiff on the

grounds that he was not licensed to practice medicine in the country where he obtained a medical

degree, because he did not complete the three-year residency program required of that country.

<u>Staudinger</u>, 1993 WL 138954 at *1. In fact, as discussed in both <u>Staudinger</u> decisions, "ECFMG

requirements for certification vary depending on the citizenship of the applicant.," <u>id.</u>, and "[t]he

process as relevant to this case entails ... proof that the FMG [foreign medical graduate] is licensed

to practice in the country in which he received his medical degree." <u>Staudinger</u>, 1994 WL 410875

at *1. Indeed, the ECFMG declined to certify the plaintiff in that case solely for that reason. <u>Id.</u> at

*2. Furthermore, the court in <u>Staudinger</u> found that the plaintiff was only suing on allegations that

the State of New York, and not the federal government, approved the private actor's decision-

8

CASE NO.:02-22032-CIV-HUCK/Turnoff

making, and that the plaintiff "does not allege anything more than such approval or acquiescence." Staudinger, 1993 WL 138954 at *5.

23.     As previously discussed, in this case, the ECFMG has denied the Plaintiff on different bases for certification, and the Plaintiff here has a different status than the plaintiff in Staudinger. Additionally, in the instant Complaint, Ms. Estevez alleges evidence, including an enacting/enabling statute that put the ECFMG in existence, which is much more substantial than mere government "approval or acquiescence" in the decisions of the ECFMG.

24.     Defendant also relies heavily on a decision from the First Circuit, Johnson v. Educational Testing Service, 754 F.2d 20 (1st Cir. 1985), for the proposition that ECFMG is not a state actor for the purpose of Ms. Estevez's deprivation of due process claims. In Johnson, as in the instant case, the Plaintiff commenced a diversity action, and claimed that the defendant, ETS, took arbitrary and capricious action in violation of her due process rights. Id. at 23. However, the Plaintiff in Johnson contended that the defendant was liable as a state actor solely on the grounds that the LSAT, an admissions test administered by the ETS, is a prerequisite to admission "to nearly all law schools, many of which, including Berkeley, are state schools," and also, that ETS had a contract with the Law School Admissions Council (LSAC) which carries out testing programs and determines general policy in law school interaction with the ETS. Id. In holding that under such facts, the plaintiff could not state a cause of action for deprivation of due process rights, the First Circuit was careful to note that "[t]his is not to say that ETS can never be s a state actor engaging in state action." Id. at 25 n. 2.

25.     In fact, the ETS *has* been found to have engaged in state action, under facts more

9

CASE NO.:02-22032-CIV-HUCK/Turnoff

closely related to those plead in the instant case. See Martin v. Educational Testing Service, 431 A.

2d 868 (N.J. Ch. Div. 1981) (where ETS concededly acted as agent of the Commonwealth of

Pennsylvania in administration of licensure examination); Golden Rule Life Ins. Co. v. Mathias, 408

N.E. 2d 310 (Ill. App. 4th Dist. 1980) (dismissal of plaintiffs' complaint was inappropriate where

plaintiffs alleged that ETS designed examinations for licensure of insurance agents and brokers,

graded examinations, and determined who passed).

26.    Unlike the facts and allegations contained in Johnson, Plaintiff in the instant

action has alleged, among other things, that (a) the ECFMG is in existence pursuant to a federal

statute, (b) an agreement in effect between the ECFMG and the U.S. State Department outlines

certain of the Defendant's corporate obligations, and (c) an important ECFMG directive is to assess

medical graduate qualifications, which could result in the receipt or denial of a license to practice

medicine. (See Second Amended Complaint.)

## CONCLUSION

In evaluating a motion to dismiss on the pleadings, a court must read the allegations in the

complaint generously, and draw all inferences in favor of the party opposing the motion. Cosmas

v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  From the allegations presented in Plaintiff's Second

Amended Complaint, the following inferences can be drawn: First, ECFMG's decisions and

administrative procedures have resulted in Ms. Estevez effectively being denied the opportunity to

pursue a medical licence.  Second, when viewing the facts and circumstances of this case *in the*

*aggregate*, as per the dictates of Burton, an inference can be made that the ECFMG was formed (and

exercises rights and privileges) pursuant to agreements with the U.S. Department of State.  These

10

CASE NO.:02-22032-CIV-HUCK/Turnoff

agreements were *enabled by* federal statutes.  Third, the ECFMG continues to operate in areas that

impact alienage and immigration as a result of those agreements.  Fourth, in addition to the

substantial facts already alleged in her Second Amended Complaint, and due to the time-consuming

and challenging process of obtaining information relevant to her case under the FOIA, Plaintiff needs

to be able to use the discovery process, mandated by the Federal Rules of Civil Procedure,  to obtain

other relevant evidence, in support of her allegations.

WHEREFORE, for all the foregoing reasons, the Plaintiff, LUCRECIA ESTEVEZ,

respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss Second

Amended Complaint, thereby allowing Ms. Estevez to pursue her cause of action.

DATED this _19th_ day of June, 2003.

Respectfully Submitted,

**Jerome H. Shevin, P.A.**
Levey, Airan, Brownstein, Shevin
  Friedman, Roen & Kelso LLP
Attorneys for the Plaintiff
Gables One Tower, Penthouse 1275
1320 S. Dixie Highway
Miami, Florida 33146
Telephone: (305) 661-6664

By: _____
    Jerome H. Shevin
    Fla. Bar No.: 097952

11

CASE NO.:02-22032-CIV-HUCK/Turnoff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Response was furnished

via regular U.S. Mail, this ____ day of June, 2003 to: **Dale L. Friedman, Esq.,** Attorney for

Defendant, Conroy, Simberg, Ganon, Krevans & Abel, P.A., 3440 Hollywood Boulevard, 2nd Floor,

Hollywood, Florida 33021.

Jerome H. Shevin