UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 02-22032-CIV-HUCK

LUCRECIA ESTEVEZ,

    Plaintiff,

vs.

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,

    Defendant.
_____/





FILED by _____ D.C.
SEP 24, 2003
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.

## FINAL ORDER OF DISMISSAL

THIS CAUSE is before the Court on Defendant, Education Commission for Foreign Medical Graduates' (hereinafter "ECFMG") Motion to Dismiss Plaintiff's Second Amended Complaint [DE #34]. The ECFMG argues that Plaintiff Lucrecia Estevez ("Estevez") has failed to state a claim upon which relief can be granted. The Court has considered the motion, the parties' respective legal memoranda and the pertinent portions of the record. Because Estevez has failed to allege facts to establish The ECFMG as a state actor, the motion is granted with prejudice..

### I. BACKGROUND[1]

Estevez is a citizen of Florida who alleges she graduated in February of 1998 from the Universidad Central del Este ("UCE"), a medical school in the Dominican Republic. The ECFMG is a corporation engaged in the business of assessing whether graduates of foreign medical schools are qualified for residency and fellowship programs in the United States. A foreign medical graduate, such as Estevez, must be certified by TheECFMG to participate in a three-part testing

---

[1] The facts, as stated in the Second Amended Complaint, are viewed in the light most favorable to Estevez.

1

process known as the United States' Medical Licensing Examination ("USMLE"). Certification from the ECFMG is required for the USMLE and by the State of Florida for a license to practice medicine. Estevez sat the first part of the USMLE in June of 1998. The ECFMG then informed her it could not verify her diploma, apparently because UCE had reported that Estevez failed certain courses.[2] Consequently, the ECFMG refused to certify Estevez for the remaining two parts of the USMLE, thereby indefinitely barring her from qualifying for a residency program and a medical license.

A committee of the USMLE initiated its own investigation into Estevez's qualifications. It determined that Estevez had possibly engaged in "irregular behavior" and recommended she be barred from completing the examination for a ten year period. Ultimately, however, the USMLE rejected the committee's position and recommended only a one year delay.

In what appears to have been an effort to remedy her academic deficiency, Estevez enrolled in a second foreign medical school and successfully completed the program. The curriculum included some courses that she had failed at UCE.[3] Estevez then re-applied to the ECFMG for certification to take the remaining two parts of the USMLE and for release of her grade on the first exam. Notwithstanding her degree from the second medical school, and without conducting a hearing on the matter, the ECFMG denied certification and barred Estevez from taking the two remaining exams for ten years. On appeal, which was conducted pursuant to Rules of Appellate Procedure promulgated by the ECFMG Board of Trustees, a review committee affirmed the decision to withhold certification for ten years.

Estevez then commenced this suit against the ECFMG claiming the appellate process denied her procedural due process, in violation of the Fifth and Fourteenth Amendments. In the first complaint, Estevez alleged that the ECFMG (1) employed unfair appellate procedures which resulted in an unreasonable and arbitrary decision to bar Estevez's certification for ten years, and (2) refused formal requests for documentation and other information on the ECFMG's initial decision process.

---

[2]*See* Second Amended Complaint at ¶19.

[3]It is reasonable to infer from the allegations that Estevez graduated from the second medical program and, as part of the curriculum, passed some (but not all) of the courses UCE reported to the ECFMG that she had failed. *See* Second Amended Complaint at ¶ 19.

The ECFMG moved to dismiss, arguing that Estevez failed to plead facts sufficient to show that the ECFMG was a state actor and, therefore, constrained by the constitutional requirement of procedural due process. That motion was granted for failure to state a claim and Estevez was given leave to amend. Shortly thereafter an amended complaint was filed, which the ECFMG moved to dismiss, again arguing the complaint failed to allege facts that would establish state action by the ECFMG. In response, Estevez sought leave to file a second amended complaint, which was granted with the caveat that she had one final opportunity to state her claim.

The Second Amended Complaint still asserts a procedural due process claim arising from The ECFMG's decision to deny Estevez the certification necessary to enter a residency program and obtain a medical license. The ECFMG has moved to dismiss, arguing for the third time that, as a private company, it is not obligated to afford constitutional due process,[4] and that Estevez has not adequately pled facts showing state action. In response, Estevez contends the nexus between the ECFMG and either the federal or state government is close enough to establish state action for the purposes of a constitutional claim. She believes the alleged facts that will establish the ECFMG as a state actor, as follows:

> Upon information and belief, [ECFMG] is an entity that serves as an arm of the United States Department of State. It has a long-standing agreement with the Department of State to serve in its stead for various functions regarding aliens and graduates from foreign medical schools, acting therein as and for the United States. It further has the authority to verify credentials to medical students completing their medical education outside the United States. Once those credentials are issued, foreign medical school students can then take the required medical examinations for certification to practice medicine in the United States
> 
> . . . .
> 
> ECFMG certification is one of the eligibility requirements necessary to take the three step testing process through the United States Medical Licensing Examination (USMLE) . . . . The State of Florida also requires foreign medical graduates to have the ECFMG certification to obtain a license to practice medicine.
> 
> . . . . .
> 
> [ECFMG's Rules of Appellate Procedure] and their implementation by [ECFMG] working on behalf of the United States Department of State were in

---

[4]If the ECFMG does not meet the test for governmental action, then the ECFMG is not required to afford her procedural due process. *See Davis v. Prudential Securities, Inc.*, 59 F.3d 1186 (11th Cir. 1995).

3

>violation of due process of law, and materially affected the Plaintiff's procedural due process rights.

(Compl. ¶¶ 9, 13, 33).

From these allegations, Estevez argues that the ECFMG acted jointly with the federal government when it denied Estevez's certification because the ECFMG functions as an arm of the United States Department of State ("State Department"), and thus has satisfied the nexus test for state action. Estevez points to the alleged agreement between The ECFMG and the State Department, which vests the ECFMG with the authority to certify foreign medical graduates for the USMLE. She contends that the State Department had the right to vest such authority in the ECFMG pursuant to 45 C. F. R. § 51.2. In Estevez's view, the alleged agreement, when read in conjunction with the federal regulation, sufficiently allege a joint enterprise between the ECFMG and the State Department. (Response at ¶¶ 3-6, 19, 26.)

## II. ANALYSIS

### A. Standard of Review

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that Plaintiff can prove no set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 104 (11th Cir. 1982). The federal rules do not require a claimant to set out in detail all the facts upon which the claim is based. *Conley*, 355 U.S. at 47. All that is required is a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff, and accept the plaintiff's well-pleaded facts as true. *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974); *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993).

### B. Standards for State Action

The Fifth and Fourteenth Amendments of the Constitution can be violated only by conduct which may be fairly characterized as "state action." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982); *Gerena v. Puerto Rico Legal Serv., Inc.*, 697 F.2d 447 (1st Cir. 1983); *Miller v. Hartwood Apartments, Ltd.*, 689 F.2d 1239 (5th Cir. 1982). Thus, a private entity is liable for a Fifth or

Fourteenth Amendment due process violation only if it acted together with a state or governmental official, or was influenced by a state or federal government. *Lugar*, 457 U.S. at 937-39. To hold that a private party is a state actor, one of three conditions must exist: 1) the state acted jointly and interdependently with the private party, so that the private party may be deemed responsible for the plaintiff's injury ("close nexus test"); 2) the state coerced, or at least significantly encouraged, the private party in its performance of the alleged wrongdoing ("state compulsion test"); or 3) the private party performed a public function that was traditionally a function of the state ("public function test"). *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001); *Rayburn v. Hogue*, 241 F.3d 1341 (11th Cir. 2001). Only in rare circumstances will a private party be viewed as a state actor because of the strict requirements of these tests. *Rayburn*, 241 F.3d at 1347.

All of the three tests for determining whether a private party has engaged in state action turn on the totality of the circumstances. *See Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722-26 (1961). "[T]he dispositive question in any state-action case is not whether any single fact or relationship presents a sufficient degree of state involvement, but rather whether the aggregate of all relevant facts compels a finding of state responsibility." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 360 (1974) (Douglas, J., dissenting). "Only by sifting facts and weighing circumstances can the nonobvious involvement of the [s]tate in private conduct be attributed its true significance." *Burton*, 365 U.S. at 722.

Although Estevez has only argued that the circumstances alleged, and the inferences from those allegations, meet the close nexus test, the Second Amended Complaint will also be measured against the state compulsion and public function tests. Upon reviewing the facts and circumstances alleged, the Court concludes that the ECFMG did not meet any of the state action tests.

### 1. Close Nexus Test

When a state so far insinuates itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity, the private party is deemed to be a "state actor" under the close nexus test. *Staudinger v. ECFMG*, 1993 U.S. Dist. LEXIS 5576, *11 (1993). Courts emphasize that a <u>substantial</u> nexus must exist between the private party and the

5

government. To meet this criterion, a private party must be so "entwined" or "impregnated" with governmental policies that it essentially acts jointly with the government. *Golden Rule Life Ins. Co. v. Mathias*, 408 N.E. 2d 310, 315 (Ill. App. Ct. 1980) *citing Evans v. Newton*, 382 U.S. 296, 299 (1966). In *Golden Rule*, the court found that the Educational Testing Service ("ETS") acted sufficiently close with the government to constitute a state actor in its licensing of insurance agents and brokers. In that case, however, ETS's examination was the single, indispensable requirement of the governmental licensing procedure. ETS's critical position in a governmental function rendered it a joint actor in the licensing procedure and, thus, a state actor under the nexus test. *Golden Rule*, 408 N.E.2d at 316. However, *Golden Rule* and other cases have established a fine line between what constitutes a substantial nexus, which would identify a party as a state actor, and other merely tenuous relationships between private parties and the government. *See e.g., id.*; *Stewart v. Hannon*, 469 F.Supp. 1142, 1147-48 (N.D.Ill. 1979); *Staudinger*, 1993 U.S. Dist. LEXIS 5576, *11. For instance, where the government relied on an ETS exam as only one of many criterion in the licensing of high school principals, the court found no substantial nexus for constitutional purposes. *Stewart*, 469 F. Supp. at 1147-48.

Despite Estevez's conclusory allegation that the ECFMG "serves as an arm of the United States Department of State," she fails to allege facts that would establish a substantial relationship between the ECFMG and the federal government as required by the close nexus test. She has alleged no facts that tie the ECFMG to a government. This case is analogous to *Stewart* in that the ECFMG's certification is merely the first of many requirements a foreign medical school graduate must meet to practice in the United States. Certification is just the beginning of the licensing procedure for candidates such as Estevez, who must then sit for the three-step USMLE. Estevez has not alleged that sitting for the USMLE is the only requirement to obtain a medical license from the State of Florida; presumably Florida has other requirements as well. The facts alleged here deviate from the testing procedure described in *Golden Rule*, where ETS's exam was the single criteria for governmental licensing. Therefore, the fact that the ECFMG plays a role in a governmental procedure does not rise to the level of being "entwined" or "impregnated" with either the federal or state government. Estevez has alleged no other facts to demonstrate that the ECFMG shared a close

nexus with the government in denying her certification.[5]

## 2. State Compulsion Test

Like the close nexus test, the state compulsion test requires a substantial relationship between the private entity and the government. For a private entity to be a state actor under the state compulsion test, the government must exert control over the entity in its performance of the conduct that allegedly violated the Fifth or Fourteenth Amendment. *See, e.g. Lugar*, 457 U.S. 922; *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995); *Remy v. Howard Univ.*, 55 F. Supp.2d 27 (D.C. Cir. 1999). Often, governmental control is predicated upon the private entity's statutory powers. *Lebron*, 513 U.S. at 386-99. However, while the fact that the government created a private entity pursuant to statute for the purpose of governmental objectives may evidence that the entity has performed functions of a state actor, such circumstances do not render the private entity a state actor in every circumstance. *See Remy*, 55 F.Supp.2d at 29. The mere creation of, or regulation over, a private entity does not meet the level of influence the government must have under the state compulsion test. *Id.* Rather, courts require that the government retain substantial authority over the private entity in general and specifically with regard to the alleged violation. *Lebron*, 513 U.S. at 394-99. For instance, where the government maintained authority to appoint a majority of directors of a government-created organization, thus substantially influencing the organization's decision-making, the organization constituted a state actor. *Id.* at 386. Similarly, a private entity was found to be a state actor when it adopted a state's statutory procedure as its own hearing procedure, since it was substantially influenced by a governmental process. *Lugar*, 457 U.S. at 940-42.

Estevez has not alleged that the state or federal government exerted control over the ECFMG in its certification process or appeal procedures. Her assertion of a "long-standing agreement" between the ECFMG and the State Department do not establish that the government actually

---

[5]Estevez cites *Martin v. Educational Testing Service*, 179 N.J.Super. 317 (N.J. 1981) *overruled on other grounds by Brady v. Department of Personnel*, 693 A.2d 466 (N.J. 1997), for the proposition that the ETS acted as a state actor in administering the LSAT. However, in that case the testing agency conceded that it was a state actor, so the court never ruled on the issue, nor applied any of the three tests for state action. *Id.* at 324 n.7.

influenced the ECFMG in its decisions or process.[6]  There are no allegations describing how the State Department could have influenced the ECFMG. For example, there are no allegations that the State Department prescribed a process for the ECFMG to verify medical credentials. In addition, there is no allegation that the State of Florida had any input into the credentialing process or the appeal procedures used by ECFMG. In fact, Estevez makes an assertion contrary to her position. She argues that the ECFMG acted pursuant to its own rules of appellate procedure, which would support a finding that the ECFMG acted independently from any governmental body. This distinguishes the present case from *Lugar*, where the defendant state actor adopted a government-proscribed procedure as its own.

### 3.  Public Function Test

The public function test requires that the private actor exercises powers that are traditionally the <u>exclusive</u> prerogative of the state. *Staudinger*, at *13; *Johnson v. Educational Testing Service*, 754 F.2d 20 (1st Cir. 1985). The fact that the entity performs functions which have been or could have been performed by the state does not signify that the party's conduct constitutes state action. *Id.* at *15. On the contrary, courts require that the opposing party show that the activity is specifically one of the government. *Id.* In *Staudinger*, the court held that testing and certification of foreign medical school graduates did not constitute a purely public function, since it was not solely the prerogative of the government, and concluded that The ECFMG was not a state actor.

Estevez attempts to distinguish *Staudinger* by arguing that the ECFMG denied certification in that case because the plaintiff had not met the eligibility requirements, whereas Estevez's certification was denied for completely arbitrary reasons. The *Staudinger* holding, however, did not turn on the plaintiff's eligibility. Instead, the decision turned on whether the ECFMG and undertaken a purely purely public function. *Staudinger*, at *13. This case is entirely consistent with *Staudinger*, because the ECFMG performed the same function in both cases. Therefore, the Court

---

[6]Estevez insinuates that the ECFMG constitutes a state actor which the government regulates pursuant to 45 C.F.R. § 51.2 and 22 C.F.R. § 62.27.  This argument fails because these regulations are inapplicable to Estevez's circumstances. The regulations pertain instead to the entirely different situation of certification of aliens seeking medical training in the United States. Estevez is a United States citizen, not an alien.

concludes that the ECFMG does not constitute a state actor when it certifies foreign medical graduates to sit for the USMLE.

### III. CONCLUSION

The Second Amended Complaint is devoid of facts sufficient to establish that the ECFMG acted as a state actor under any test. Thus, Estevez has not stated a Fifth or Fourteenth Amendment claim upon which relief can be granted. Furthermore, because this is her third attempt to state a claim, the case is DISMISSED WITH PREJUDICE.

DONE in Chambers, Miami, Florida, this 24th day of September, 2003.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record